**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Franconia Minerals (US) LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America, et al.,<br><br>Defendants. | Case No. 16-cv-3042 (SRN/LIB)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Daniel S. Volchok, Paul R.Q. Wolfson, Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue Northwest, Washington, District of Columbia 20006, Michael J.P. Hazel, Wilmer Cutler Pickering Hale and Dorr LLP, 1225 Seventeenth Street, Suite 2600, Denver, Colorado 80202, Mark R. Kaster, and Steven J. Wells, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, Minnesota, 55402, for Plaintiffs.

Clare Boronow, Marissa Piropato, Sean C. Duffy, U.S. Department of Justice–Environment and Natural Resources Division, 601 D Street Northwest, Washington, District of Columbia 20004, Stuart C. Gillespie, U.S. Department of Justice–Environmental and Natural Resources Division, 999 Eighteenth Street South Terrace, Suite 370, Denver, Colorado 80202, and David W. Fuller, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Defendants.

James A. Tucker, Joseph R. Palmore, Joseph A. Ward, Morrison & Foerster LLP, 2000 Pennsylvania Avenue Northwest, Suite 6000, Washington, District of Columbia 20006, Amy S. Conners, Thomas B. Heffelfinger, Best & Flanagan LLP, 60 South Sixth Street, Suite 2700, Minneapolis, Minnesota 55402, and Stephen J. Snyder, Snyder & Brandt, P.A., 120 South Sixth Street, Suite 2550, Minneapolis, Minnesota 55402, for Movant Northeastern Minnesotans for Wilderness.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

This matter is before the Court on the motion of Movant Northeastern Minnesotans

1

for Wilderness ("NMW") to intervene as a defendant. (*See* Mot. to Intervene [Doc. No. 25].) NMW contends that it is entitled to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2). Alternatively, it asks the Court to permit it to intervene under Rule 24(b)(1)(B), which governs permissive intervention. Because the Court concludes that intervention is warranted pursuant to Rule 24(b)(1)(B), NMW's motion is granted.

## II.     BACKGROUND

### A.     The Parties

Plaintiff Twin Metals Minnesota LLC ("Twin Metals") is a privately owned mining company headquartered in Minnesota that focuses on developing and operating mining projects in northeastern Minnesota. (*See* Pls.' Mot. to File Suppl. and Am. Compl. [Doc. No. 56], Ex. A ("Suppl. Compl.") at ¶ 14.) Franconia Minerals (US) LLC ("Franconia"), a wholly-owned subsidiary of Twin Metals, engages in the discovery and development of base metals and platinum-group metals in the United States. (*Id.* at ¶ 14.) Franconia is "the owner by assignment of any and all rights, titles, and interests" in the two federal hardrock mineral leases that form the basis of this action. (*Id.*)

Movant NMW is a non-profit corporation based in Ely, Minnesota. (Heffelfinger Decl. [Doc. No. 28], Ex. A ("Rom Decl.") at ¶ 2.) It was formed in 1996 and today has approximately 5,300 members and 93,000 additional supporters. (*Id.* at ¶¶ 2, 6.) NMW describes its mission as "to protect and preserve wilderness and wild places in Minnesota's Arrowhead region, to advocate for the protection of the Boundary Waters [Canoe Area Wilderness] and Voyageurs National Park and the enhancement of their wilderness aspect,

and to foster education about the value of wilderness and wild places." (Movant's Mem. in Supp. of Mot. to Intervene [Doc. No. 27] ("Movant's Mem.") at 3 (citing Heffelfinger Decl., Ex. B ("Piragis Decl.") at ¶ 2).) "NMW's members rely on, appreciate, and benefit from the natural resources in the Superior National Forest, especially the waters, lands, plant communities and wildlife in the Boundary Waters and Voyageurs National Park, and have had a long-standing interest in lynx, moose, wolf, and forest conservation, both in the Boundary Waters and across the Superior National Forest." (*Id.*)

Defendants include the United States, the Department of the Interior, the Department of Agriculture, the Secretary of the Interior, the Solicitor of the Department of the Interior, the Secretary of Agriculture, the Forest Service, the Chief of the Forest Service, and the Bureau of Land Management ("BLM"). All individual defendants are sued in their official capacities. (Suppl. Compl. at ¶¶ 18, 19, 22, 24.) Defendants have filed no briefing on this matter and do not oppose intervention. (*See* Hr'g Tr. [Doc. No. 68] at 23:24-24:1.)

B.   **The Complaint**

The present action stems from BLM's decision to reject Plaintiffs' application to renew two mining leases on land located in the Superior National Forest. (*See* Suppl. Compl. at ¶¶ 1, 2, 11.) Plaintiffs' predecessor-in-interest first acquired the leases in 1966, after lengthy negotiation with BLM. (*See id.* at ¶¶ 58-63.) The initial lease term was for twenty years, with an option to renew for ten year intervals thereafter. (*See id.* at ¶ 65.) Of central importance to the case, Plaintiffs contend that the option to renew was invested in the lessee and was essentially non-discretionary on the part of BLM. (*See id.* at ¶¶ 4, 67, 72.) Pursuant to the renewal option, Plaintiffs' predecessors-in-interest successfully

3

renewed the lease in 1989 and in 2004. (*See id.* at ¶¶ 70, 78, 82.)  In 2012, however, when Franconia applied for a third lease renewal, things did not go as smoothly.  According to Plaintiffs, various environmental organizations—presumably including NMW—"put intense pressure on officials at the Department of the Interior, BLM, and the Forest Service to deny the renewal application, arguing that BLM had the authority to do so." (*Id.* at ¶ 88.) Whether as a result of that pressure or for another reason, BLM asked defendant Hilary Tompkins, the Solicitor of the Department of the Interior, for an opinion as to whether it had the discretion to deny Franconia's application for renewal. (*Id.* at ¶ 89.)  On March 8, 2016, Tompkins issued her opinion—which is binding on BLM—concluding that Franconia did not have a non-discretionary right to renewal, and that BLM could grant or deny the application at its discretion. (*Id.* at ¶ 90.)

Based on the Solicitor's opinion, BLM announced its intention to consider Franconia's application as if it were an application for an initial lease.  This process included asking the Forest Service whether it consented to renewal of the lease, and an environmental analysis pursuant to the National Environmental Policy Act ("NEPA"). (*Id.* at ¶ 93.)  On December 14, 2016, the Forest Service issued its decision declining to consent to renewal of the leases. (*Id.* at ¶ 101.)  Based in part on that decision, as well as the Solicitor's opinion, BLM rejected Franconia's application to renew its leases the following day. (*Id.* at ¶¶ 104-106.)

In light of the above alleged facts, Plaintiffs' Complaint raises four counts against various Defendants.  Count I, brought pursuant to the Quiet Title Act, 28 U.S.C. § 2409a, contends that Plaintiffs have a renewable leasehold interest in the mineral estates covered by

4

the two at-issue leases. (*Id.* at ¶ 110.) Plaintiffs contend that BLM's lease denial, along with the Solicitor's opinion, have created an actual and concrete controversy between the parties regarding their respective interests in the estate, and, accordingly, Plaintiffs seek an adjudication of that dispute and a declaration of their leasehold interest. (*Id.* at ¶ 114.) Counts II through IV allege variously that the Solicitor's opinion, the Forest Service's denial of consent to renewal of the leases, and the BLM's decision to deny renewal, are arbitrary, capricious, or not in accordance with law, in violation of the Administrative Procedure Act ("APA"). (*Id.* at ¶¶ 115-131.) Plaintiffs accordingly request that the opinion—and the denials based upon it—be set aside. (*Id.*)

      **C.**     **NMW's Motion to Intervene**

NMW filed the present motion to intervene on November 21, 2016—slightly over two months after Plaintiffs commenced suit. (*See generally* Compl. [Doc. No. 1]; Mot. to Intervene.) In its motion papers and supporting declarations, NMW stresses the danger posed by mining and other activities—such as those proposed and undertaken by Plaintiffs—to its members' use and enjoyment of their property and the Boundary Waters, as well as to their livelihoods. (*See* Movant's Mem. in Supp. of Mot. to Intervene at 5-13.) In particular, NMW notes that the "low buffering capacity of water and soil and the interconnection of lakes and streams make the Boundary Waters and Voyageurs National Park watershed particularly vulnerable to the impacts of sulfide-ore copper mining." (*Id.* at 6.) It alleges that sulfide-ore mining will cause acid mine runoff to leach into the watershed, causing permanent pollution that will likewise permanently damage the ecosystem. (*Id.* at 6-11.) In addition to these longer-term harms, NMW contends that its members are already

5

suffering concrete harm from Plaintiffs' actions. In particular, they cite to noise and other pollution resulting from ongoing exploratory drilling, and a drop in property values resulting from fears about possible mining activity. (*See id.* at 9-10; Hr'g Tr. at 15:14-16:25.) Because NMW argues that it has a cognizable interest in the subject matter of the litigation, will suffer clear and concrete harm if Plaintiffs' claims are granted, and because its interests are not adequately represented by the Defendants, it seeks to intervene—either as of right or pursuant to the Court's permission. (*See* Movant's Mem. in Supp. of Mot. to Intervene at 14-22.)

### III. DISCUSSION

#### A. Standard of Review

Rule 24 of the Federal Rules of Civil Procedure sets forth two bases upon which intervention may be sought. Under Rule 24(a), the court must permit a movant to intervene if (1) the movant is given an unconditional right to intervene by federal statute; or (2) the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." In addition to these statutorily imposed hurdles, the Eighth Circuit requires that prospective Rule 24(a) intervenors demonstrate the existence of an Article III case or controversy. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1300-01 (8th Cir. 1996). So long as it is timely brought, a properly grounded motion to intervene— meeting all constitutional and statutory constraints—must be granted. *See United States v. Union Elec. Co.*, 64 F.3d 1152, 1160 (8th Cir. 1995); *Kansas Pub. Emps. Ret. Sys. v.*

*Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1306 (8th Cir. 1995).

In contrast to the rigid and non-discretionary nature of intervention under Rule 24(a), Rule 24(b) intervention is marked by broad flexibility. As relevant here, the Rule provides that a timely motion to intervene may be granted by the court where the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). As the Eighth Circuit has recognized, "[t]he decision to grant or deny a motion for permissive intervention is wholly discretionary." *S.D. ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003). Indeed, "[r]eversal of a decision denying permissive intervention is extremely rare, bordering on nonexistent."[1] *Id.*

Despite the wide latitude granted to district courts in considering a motion for permissive intervention, certain well-established criteria must be met before such a motion will be granted. Among the main considerations are (1) whether the motion to intervene is timely; (2) whether the movant's claim shares a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice adjudication of the original parties' rights. *See North Dakota v. Heydinger*, No. 11-cv-3232 (SRN/SER), 2013 WL 593898, at *4 (D. Minn. Feb. 15, 2013). In addition, although "only a minor variable in the Rule 24(b) decision calculus," the adequacy of protection afforded to the prospective intervenors by the existing defendants is a factor. *S.D. ex rel. Barnett*, 317 F.3d at 787. Finally, although the Eighth Circuit has not

---

[1] The Court's research suggests the same holds true for a decision granting permissive intervention.

explicitly required that parties intervening under Rule 24(b)(2) establish Article III standing, most district courts in this circuit to have considered the matter have done so. *See North Dakota v. Heydinger*, 288 F.R.D. 423, 427 (D. Minn. 2012) (collecting cases); *but cf. In re Baycol Prods. Litig.*, 214 F.R.D. 542, 544 (D. Minn. 2003) (declining to require Article III standing as prerequisite to Rule 24(b) intervention).

B.     **Permissive Intervention**

Because NMW moves to intervene both as a matter of right and with the Court's permission, this Court may grant the motion on either or both bases. *See, e.g.*, *City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011); *Hartong v. Blue Valley Fed. Sav. & Loan Ass'n*, 767 F. Supp. 1017, 1022 (W.D. Mo. 1990). For the reasons that follow, the Court finds permissive intervention to be appropriate here.

1.     **Article III Standing**

To establish Article III standing, NMW must show (1) injury, (2) causation, and (3) redressability. *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 974 (8th Cir. 2014). To do so, it must first "clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is concrete, particularized, and either actual or imminent." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (quotation and citation omitted). Next, it must demonstrate a causal connection between the injury and the conduct complained of, such that its injury is "fairly traceable to the defendant's conduct." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Metro. St. Louis Sewer Dist.*, 569 F.3d at 834. Finally, NMW must establish that a favorable decision will likely redress the injury. *Nat'l Parks Conservation Ass'n*, 759

F.3d at 975.

Turning first to the matter of injury in fact, the Court concludes that NMW has amply demonstrated an actual, concrete, and particularized harm. At the most immediate level, it has submitted the declarations of several members who own property adjacent to or near the land covered by the at-issue leases. (*See* Heffelfinger Decl. (attaching declarations).) Many of these individuals have testified to the substantial pollution—whether actual or in the form of noise—that they have been subjected to by Plaintiffs' exploratory drilling activities. (*See id.*, Ex. Z ("Koschak Decl.") (describing the sound of exploratory drilling as similar to "putting your Kitchen-Aid mixer on the counter, plug[ing] it in, throw[ing] rocks into the steel pot, and leav[ing] it running with the blades grinding the rocks and hitting the sides of the pot 24 hours a day, seven days a week, for months on end"). The mental, physical and emotional stress caused by such activities—not to mention impaired property value—is a clear, concrete, actual injury. *See Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 987-88 (8th Cir. 2011); *Coal. for Env't v. Volpe*, 504 F.2d 156, 167 (8th Cir. 1974). Thus, this prong of the analysis is met.

Having established the existence of an injury in fact, the other two elements of the standing inquiry need not delay the Court long. "To satisfy causation, [NMW] must show that its 'alleged injury is fairly traceable to the defendant's conduct.'" *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (quoting *ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1092 (8th Cir. 2011)). This requirement may be met even where the defendants and the intervenor seek the same outcome, so long as the defendants would be compelled to cause the alleged injury to the intervenor if the plaintiffs prevail. *Tarek ibn*

9

*Ziyad Acad.*, at 1093. In the present matter, a victory by Plaintiffs in this litigation would necessarily force the Defendants to renew the mining leases, restarting the exploratory drilling that is the immediate source of harm to NMW's members.

Finally, NMW's injury is subject to redress. If it, as a defendant, prevails in upholding the denial of Plaintiffs' lease renewal application, it will be freed from the selfsame activity that is the source of injury. That is plainly sufficient to demonstrate redressability, and thus NMW has adequately demonstrated standing in this matter. *Cf. Mausolf*, 85 F.3d at 1301-02 (holding that standing existed where prospective intervenors sought to prevent plaintiffs from succeeding in vacating new, more restrictive national park use-restrictions).

2.  **Rule 24(b)(2) Factors**

The Court now turns to the criteria underscoring permissive intervention. Because timeliness is undisputed, the first inquiry is whether NMW has raised a question of law or fact common to the questions presented by the existing action. *See Nat'l Parks Conservation Ass'n*, 759 F.3d 975; *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 423 (8th Cir. 1999). Here, NMW seeks to uphold, under the APA, the same actions that Plaintiffs seek to overturn. (*See generally* Movant's Mem. in Supp. of Mot. to Dismiss [Doc. No. 31].) "Thus, applicant['s] claims and the main action obviously share many common questions of law and perhaps of fact." *Minn. Pub. Interest Research Grp. v. Selective Serv. Sys.*, 557 F. Supp. 923, 924 (D. Minn. 1983). While Plaintiffs make much of the fact that NMW's reasons for doing so are inherently different than those of Defendants, the Court's inquiry is to the movant's arguments, not its purpose in making

them. *Cf. Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110-11 (9th Cir. 2002) (holding that while lack of interest in the subject of litigation precluded intervention under Rule 24(a), permissive intervention was warranted where movant presented defenses that were "directly responsive" to the plaintiff's claims). The Court thus concludes that NMW has adequately demonstrated the existence of common questions of law or fact.

The next question is whether intervention will unduly delay or prejudice adjudication of the original parties' rights. The Eighth Circuit has indicated that this factor is the "principal consideration in ruling on a Rule 24(b) motion . . . ." *S.D. ex rel. Barnett*, 317 F.3d at 787 (citations omitted). Plaintiffs argue that allowing NMW to participate in this litigation would "interject collateral issues" and "inevitably mean more motions, more discovery disputes, and more scheduling difficulties." (Pls.' Mem. in Opp. to Mot. to Intervene [Doc. No. 51] at 24.) The Court finds these contentions unconvincing. This case is in its earliest stages—discovery has not commenced, no Rule 26(f) conference has been held, and Plaintiffs have yet to file any memoranda responsive to the various motions to dismiss currently pending. Accordingly, any concerns related to rework or repetition are minimal. Likewise, although Plaintiffs are in some sense correct that adding a new defendant will naturally increase the burden on the original litigants in terms of new filings and new seats "at the table," that alone is insufficient to warrant denial of the motion to intervene—the addition must be "unduly" burdensome, not just burdensome. The Court sees nothing to suggest that adding NMW would cause

such significant difficulties to the parties or obstruct the flow of litigation.[2]

Furthermore, although Plaintiffs contend that NMW's entry into this litigation would inject collateral issues that would distract from the claims in dispute, the Court is hard pressed to see what those issues might be. NMW's motion to dismiss, for instance, raises essentially identical defenses to those raised in Defendants' own motion. (*Compare* Movant's Mem. in Supp. of Mot. to Dismiss *with* Defs.' Mem. in Supp. of Mot. to Dismiss [Doc. No. 47].) While NMW may well raise arguments based on broader or narrower concerns and different familiarity with the subject matter of the litigation, that in and of itself is not a bad thing—the Court expects to profit from a diversity of viewpoints as they illuminate the ultimate questions posed by the parties. *See, e.g.*, *King v. Christie*, 981 F. Supp. 2d 296, 310 (D.N.J.) (noting advantage of "alternative viewpoint" in "resolving plaintiffs' claims fully and fairly"); *Pickup v. Brown*, No. 2:12-cv-02497-KJM-EFB, 2012 WL 6024387, at *4 (E.D. Cal. Dec. 4, 2012) (same). Thus, the Court finds that there is no real likelihood that allowing NMW to intervene would cause undue delay or prejudice to any of the original parties.

Finally, although only a "minor variable" in the equation, *S.D. ex rel. Barnett*, 317 F.3d at 787, the Court does not find that Defendants so clearly represent NMW's interests so as to outweigh other factors weighing in favor of allowing intervention. It is true, of course, that where one party to a lawsuit is an arm or agency of the government, and the case concerns a matter of sovereign interest, the government is presumed to represent the

---

[2] On this point, the Court finds it worthy of note that Defendants do not oppose NMW's intervention in this matter—suggesting that at least one of the original parties is not overly concerned with delay or prejudice. (*See* Hr'g Tr. at 23:24-24:1.)

interests of all its citizens. *See N.D. ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015). This *parens patriae* presumption may be rebutted, however, through a strong showing of inadequate representation. *Mausolf*, 85 F.3d at 1303. Thus, in *Mausolf*, the Eighth Circuit concluded that the government failed to adequately represent the interests of conservation groups where the government had in the past "waived and failed to enforce regulations," and where the enactment of current regulations (the subject of the suit) was probably prompted by the conservation groups' agitation. *Id.* Given that, in the present matter, Defendants have only recently changed their opinion regarding their authority to deny lease renewals—likely at the behest of NMW and other environmental groups—and that a real possibility exists that administrative priorities may shift with the onset of the new administration, the Court finds it a close question whether NMW has rebutted the *parens patriae* presumption. At the very least, however, this lesser factor does not clearly outweigh those more persuasive considerations that align with NMW here.

### IV.   CONCLUSION

On the balance of factors, therefore, the Court concludes that NMW has adequately demonstrated that permissive intervention is warranted here. It need not, therefore, consider whether intervention would also be appropriate as a matter of right under Rule 24(a)(2).

**THEREFORE, IT IS HEREBY ORDERED THAT:**

   1.   Movant's Motion to Intervene as a Defendant [Doc. No. 25] is

**GRANTED**.

Dated: February 21, 2017                     s/Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge